IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WILMARY SANTOS-SANTOS<br><br>Plaintiff<br><br>vs<br><br>REYNALDO TORRES-CENTENO;<br>GREGORIO MERCED-VAZQUEZ;<br>WILLIAM RUIZ-BORRAS;  MIGUEL A.<br>SANTIAGO-RIVERA; COMMONWEALTH<br>OF PUERTO RICO; PUERTO RICO<br>POLICE DEPARTMENT; JOHN DOE;<br>RICHARD ROE; PETER ROE; NANCY<br>DOE and CARL ROE<br><br>Defendants | CIVIL 11-1072CCC |

**ORDER**

Before the Court is a Motion for Summary Judgment filed on December 18, 2011 (**docket entry 25**) by defendants Commonwealth of Puerto Rico, the Police Department of Puerto Rico, Gregorio Merced, Reynaldo Torres-Centeno, William Ruiz-Borrás and Miguel A. Santiago-Rivera.  As will be discussed, the plaintiff's position has been that defendants have withheld important documents, particularly administrative complaints filed by her before the Police of Puerto Rico against defendants Torres-Centeno, which are essential for her to file an opposition to the dispositive motion.  Given the verbosity of the filings on both sides, which fosters their disorganized and unfocused analysis, the Court will attempt at the outset to define the issues.

Essentially, the allegations of the complaint filed by Wilmary Santos-Santos (docket entry 1) fall under Title VII and 42 U.S.C. § 1983.  The first introductory statement of her complaint invoking these statutes claims the taking of "retaliatory and discriminatory actions against her on account of her testifying in a sexual harassment case denouncing unlawful employment practices."  Complaint, at ¶ 1.  She also seeks injunctive relief at paragraph 6 of the complaint:

> restraining defendants from continuing or maintaining any policy, practice,
> custom, and usage of withholding or denying, attempting to withhold or deny,

CIVIL 11-1072CCC                                2

> or depriving or attempting to deprive, otherwise interfering, with the rights of
> plaintiff and other members of her class, female police officers working for the
> [Puerto Rico Police Department] 'PRPD', the full use and enjoyment of her
> rights in the Puerto Rico Police Department ('PRPD') without discrimination on
> the basis of gender. Said pattern and practice of discrimination based solely
> on sex deprived plaintiff Wilmary Santos and other members of her class,
> female police officers working for the 'PRPD', of equal opportunity for
> promotion, advancement and compensation in that their been (sic)
> systematically excluded from assignments based on their sex deprives the
> plaintiff and other members of class, female police officers working for the
> 'PRPD', of obtaining the qualifications necessary for promotion advancement
> and increased compensation.

Id., at pp. 4-5.  Plaintiff also makes a generic reference to her action being brought as a conspiracy claim under 42 U.S.C. §§ 1985 and 1988 and the Fourth and Fourteenth Amendments to the U.S. Constitution as well as the Whistleblower Protection Act of 1989. She invokes supplemental jurisdiction of the claims arising under Articles 1802 and 1803 of the Civil Code of Puerto Rico.  At paragraph 4 of the complaint, it is stated that plaintiff filed a timely charge with the Puerto Rico Department of Labor's Anti-Discrimination Unit (ADU) and the Equal Employment Opportunity Commission (EEOC), claiming "employment discrimination on the basis of retaliation."

Plaintiff states at paragraph 7 of the complaint that she "is a policewoman working for the 'PRPD' for the last seventeen years."  The Commonwealth of Puerto Rico  is brought as an employer within the meaning of § 701 of Title VII and 29 U.S.C. § 630(b).  Id. at ¶ 8.  The Puerto Rico Police Department (PRPD) is defined as "an instrumentality of the Commonwealth of Puerto Rico which . . . through its Superintendent José Figueroa-Sancha and all commanders and supervisors, . . . were . . . in charge of maintaining a working environment free of intimidating, hostile or offensive sexual discrimination that interferes with an individual's job performance."  Id.  At paragraph 9, it is alleged that the "'PRPD' has employed more than 500 persons during the last 20 or more calendar weeks in the current or preceding calendar year."   The individual defendants are identified as Gregorio Merced-Vázquez, Director of the PRPD for the Caguas Region, William Ruiz-Borrás, the Commander of the Caguas Criminal Investigations Corps (CIC) Division, Captain Miguel A.

CIVIL 11-1072CCC                                3

Santiago-Rivera, as Director of the Caguas CIC, and Reynaldo Torres-Centeno, the principal defendant, as Director of the Caguas Strike Force of the PRPD. Id., at ¶ 10. At paragraph 11, the complaint avers that the individual defendants are sued "in their personal and official capacities . . . for their grave omissions and/or reckless disregard for the enforcement of regulations that prohibit sexual harassment and a hostile environment in the workplace . . . [which] significantly contributed to serious violations of plaintiff's . . . civil rights."

        The first allegation of concrete facts appears at paragraph 12 of the complaint in which plaintiff makes specific reference to the individual defendants named in paragraphs 10 and 11, and avers that they "under color of law, knew and/or should have known about the facts set forth in the original administrative complaint filed by Wilmary Santos-Santos regarding retaliation against her for being a witness in a sexual harassment claim by fellow officer Sofia Figueroa-Rossy and for having complained of various irregularities taking place under the tutelage of Lt. Reynaldo Torres-Centeno at the PRPD Caguas Strike force." This is followed by allegation number 13 that "[n]otwithstanding such knowledge, said co-defendants, under color of law, took no meaningful steps to halt the retaliation, hostile environment and gender based discrimination incidents despite repeated complaints by plaintiff that these affairs were adversely affecting the workplace and her working conditions as well as her person." At paragraph 14, plaintiff points to "Lt. Reynaldo Torres-Centeno's pervasive and continuous retaliation and its effect on the office." She claims that she repeatedly complained about this to the PRPD and "the PRPD failed to correct the situation." Id. In that same paragraph, she claims that "[t]he co-defendants named herein are liable for the damages suffered by plaintiff as a result of their deliberate indifference and callous disregard to the rights of female police officers such as plaintiff, including her, to be free from gender discrimination at the workplace and during working hours."

CIVIL 11-1072CCC                              4

Plaintiff then refers to John Doe defendants, at paragraph 15, as "other police agents and/or supervisors whose names are unknown who through their acts and/or omissions aided and abetted in the commission of acts and/or omissions constituting retaliation against plaintiffs for having participated as a witness in a sexual harassment complaint filed administratively with the Caguas Division of the PRPD and having complained about improper use of PRPD property by an officer of the PRPD."

Allegations 16 through 33 under the subsection of "FACTS" all have to do with Santos-Santos' claim of retaliation against the various individual defendants on account of her having filed different administrative complaints to which specific reference is made.  She states at paragraphs 16 and 17 of the Complaint that in the year 2009 she began working for the Strike Force Division, Caguas Precinct, and that she "is a witness in a sexual harassment case against Simara Torres, director of administration of the CIC, Caguas division."  Paragraphs 17 through 23 are all related to a complaint which plaintiff states that she filed on April 5, 2010 against defendant Reynaldo Torres-Centeno, Director of the Strike Force, Caguas Precinct.  At paragraph 19, she describes the contents of the complaint, stating that she complained to "Colonel Gregorio Merced-Vázquez, who was the director of the Caguas area, about the fact that Lieutenant Torres and others were using official vehicles of the Puerto Rico Police Department for personal matters, and also about other illegal activities going on regarding Lieutenant Torres and other Agents."  She alleges at paragraph 20 that she went with Sergeant Maribel Cartagena, her immediate supervisor, "to deliver a written complaint to Colonel Gregorio Merced Vázquez, [who] did not receive them, and referred them to Commander William Ruiz-Borrás for a recommendation on the matter [and that ] . . . Ruiz-Borrás interviewed plaintiff, Sergeant Cartagena, and also Agent Claude Merced."  Paragraph 21 narrates a phone call received by plaintiff after such meeting "from Commander Ruiz-Borrás asking plaintiff as to how she thought that Torres was going to react after he knew about the complaint filed by Plaintiff."  She then alleges that she told

CIVIL 11-1072CCC                              5

Commander Ruiz-Borrás that she feared for her life for Torres was aggressive and that Ruiz-Borrás told her "that he would recommend to Colonel Merced that Lieutenant Torres be transferred to another place for security reasons until the investigation was concluded." Plaintiff then includes allegations of retaliation: on paragraph 22 that on April 6, 2010, Lieutenant Reynaldo Torres-Centeno ordered agents Figueroa-Ayala and Acevedo-Almódovar to write memos against plaintiff and the memo prepared by these agents were delivered to Colonel Merced-Vázquez; on paragraph 23 that on April 15, 2010 a second letter of retaliation was delivered to Cartagena and to commander Ruiz-Borrás (the nature of the retaliation is not specified); on paragraph 25 that on May 2, 2010, plaintiff noticed while at work at the precinct's front desk "that she was being excluded from a Strike Force operation that was to take place at the Carolina area;" on paragraph 26 that on May 18. 2010, plaintiff was notified by Sergeant Cartagena that Lieutenant Torres ordered Cartagena to report to the precinct "because he had Plaintiff's transfer signed by Lieutenant Merced and wanted to transfer plaintiff right away;" at paragraph 27 that plaintiff complained to Cartagena and inquired "why she was being transferred if she did not request it, and that it was an act of retaliation against her;" at paragraph 28 that "[o]n May 28, 2010, Plaintiff complained about her transfer to Rivera Vega, from CIC Caguas . . . asked him if she could be assigned to the Special Arrests Division, where she was assigned before being part of the Strike Force;" at paragraphs 29 and 30 that although Lieutenant Rivera-Vega informed that he had no problem with her request, CIC Director Captain Miguel Santiago-Rivera denied the same and on June, 1, 2010 plaintiff was transferred to the Property Division; at paragraph 31 where plaintiff describes Santiago-Rivera's acts as "a clear act of retaliation against [her] for having been witness in a sexual harassment case against Sergeant Simara Torres, who was his right hand at the CIC Caguas Division . . . [and] also retaliation for denouncing the illegal activities of Lieutenant II Reynaldo Torres-Centeno;" at paragraphs 32 and 33 that upon being assigned to the Property Division, she was interviewed by Lieutenant

CIVIL 11-1072CCC                                    6

Felix Guadalupe-Rivera on June 1, 2010, requested that he assign her to the night shift which he did but on June 7, 2010 she was informed at work that Agent Figueroa had returned her to work at the Property Division and requested the night shift.  Thereafter, Lieutenant Guadalupe and others changed plaintiff's shift and assigned her to work on most weekends.

We will now review the allegations made under the different causes of action.  The first cause of action includes the following allegation at paragraph 34: "After Plaintiff denounced the illegal activities of Torres, and also after testifying as a witness in a sexual harassment case against Sex Crimes division head Simara Torres, defendants have been retaliating by way of transferring Plaintiff; issuing unfounded memos about her performance; making changes in her shift hours and making Plaintiff work every weekend."   At paragraph 36 she squarely defines her Title VII claim under its retaliation provision stating that:  "The denounced action violates the provisions of Title VII of the Civil Rights Act, which prohibit retaliation for being a witness in a gender based discrimination suit and for being a witness and complaining about improper and/or illegal acts of a member of the entity for which plaintiff works."  The second cause of action incorporates the first 36 allegations and, without providing any specifics, claims at paragraphs 38 and 39 that all defendants conspired against her to deprive her "of the equal protection of the laws" and that each is individually liable because they acted "under the authority of their Puerto Rico Police Department positions and ranks."   The third cause of action, brought under section 1983, alleges at paragraph 41 that plaintiff "engaged in constitutionally protected conduct and this conduct was a substantial or motivating factor in the alleged adverse employment decision taken by Defendants," in obvious reference to her transfer, and at paragraph 43 she asserts that the adverse employment actions were due to the exercise of her First Amendment rights.  The fourth cause of action is brought under P.R. Law 115 which bars discrimination against employees for offering or attempting to offer, verbally or in writing, any testimony, expression

CIVIL 11-1072CCC                                    7

or information before a legislative, administrative or judicial forum in Puerto Rico.  The fifth

cause of action is an ordinary tort action claiming damages for negligence against all

defendants.

A Case Management Order was issued on March 26, 2011 (docket entry 6)

establishing, among others, until June 10, 2011 to make Fed. R. Crim. P. 26(a)(1) mandatory

disclosures if not yet made, a thirty (30) day period after notice of such order to identify all

John Doe type defendants by their true names, and until November 18, 2011 to conduct

discovery.

We now reach the Motion for Summary Judgment filed on December 18, 2011 by all

defendants (docket entry 25).  Defendants have extensively cited case law which can be

summarized as addressing two basic principles: (1) that a defendant can support a motion

for summary judgment by showing that the adverse employment action was taken for a

non-retaliatory reason and (2) that in such a case the plaintiff must present evidence that

raises a material issue of fact on whether retaliation was a cause of the adverse action (p. 8

of the Motion).  Defendants first attack the allegations of hostile work environment and

gender-based discrimination which were neither presented before the EEOC and which are

unsupported by concrete factual allegations.  The gender-based discrimination and hostile

work environment claims of the plaintiff are framed in the complaint in the context of its

paragraph 6 which refers generally to "the rights of plaintiff and other members of her class,

female police officers working for the PRPD, the full use and enjoyment of her rights in the

PRPD without discrimination on the basis of gender."  There are conclusory references in

that paragraph to a pattern and practice of discrimination based on sex in violation of the

rights of the members of the so-called "class" which is defined only as "female police officers

working for the PRPD."  Defendants correctly contend that, due to the absence of concrete

facts in support of the gender discrimination claim, the complaint fails to state a claim of relief

under Title VII.  The Court notes that none of the five causes of action incorporate a claim

CIVIL 11-1072CCC                                8

for gender discrimination against the so-called class members or against plaintiff for that matter.  Nor has plaintiff made any attempt to comply with the requirements established by Fed. R. Civ. P. 23 on class actions.

As for the other five causes of action explicitly listed in the Complaint, defendants contend that all fail to state a claim.  Plaintiff has not filed an opposition to the summary judgment motion, relying on the contention that defendants have not produced the discovery requested which she needs to craft her response (see e.g. docket entries 28 and 37).  She did not, however, avail herself of the specific mechanism provided by Fed. R. Civ. P. 56(d) for such situations until the Court required her to do so during the pretrial conference held on March 15, 2012 (see docket entry 40).  Plaintiff finally filed her Rule 56(d) affidavit (docket entry 42-2), making reference in its paragraph 17 to the particular documents which she insists she must obtain from defendants in order to document her opposition.  Having reviewed said list of documents, we note that these are relevant only to her § 1983 claim alleging violation of the First Amendment based on retaliatory actions taken against her after she denounced alleged acts of corruption by defendant Reinaldo Torres-Centeno and other agents of the Caguas Strike Force.

The problem plaintiff confronts is that the allegations of her complaint fail to state sufficient facts to configure a claim under the First Amendment.  The First Amendment, of course, also prohibits retaliation for protected conduct.  See González–Droz v. González-Colón, 660 F.3d 1, 16 (1st Cir.2011).  But, in order for a public employee to sustain a First Amendment retaliation claim, he must show that: (1) he engaged in constitutionally protected speech, (2) the employer took adverse employment action against him, and (3) his speech was a substantial or motivating factor in the adverse action.  To establish the first element -- that he engaged in constitutionally protected speech -- the public employee must demonstrate that (1) he spoke on a matter of public concern, and (2) as a private citizen.  Garcetti v. Ceballos, 547 U.S. 410,  418, 126 S.Ct. 1951 (2006).  Plaintiff's complaint

CIVIL 11-1072CCC                                    9

nowhere states that she made her denunciation of Torres-Centeno's averred acts of corruption as a private citizen.  Her recent admission in the Declaration Under Penalty of Perjury (docket entry 42-2), where, at paragraph 3, she acknowledges having filed the administrative complaint against Torres-Centeno "**fulfilling my** duty" explains the omission. Thus, plaintiff's First Amendment retaliation claim must be dismissed for her failure to meet the "facial plausibility" requirement established in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

        Plaintiff fares no better with respect to the conspiracy claims under 42 U.S.C. § 1985. It is firmly established that a section 1985 claim "requires 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.' " Pérez–Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir.2008) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790 (1971)).  The complaint is absolutely devoid of allegations that plaintiff was the object of racial discrimination    And, besides the conclusory references made in paragraph 6 of the complaint to a pattern and practice of discrimination based on sex, there are no concrete factual allegations included which would so establish.  Plaintiff's generic statements regarding a conspiracy between the defendants, absent any factual support, are insufficient to allege a cause of action arising under 42 U.S.C. § 1985.  As also established in Iqbal, it is not enough for a complaint to tender "naked assertions[s]" without "'further factual enhancement."   Iqbal, 129 S.Ct. at 1949. Thus, plaintiff's § 1985 conspiracy claim also fails on the pleadings.

        We also note that plaintiff's complaint invokes in its initial two paragraphs the Whistleblower Protection Act of  1989 and the Fourth Amendment.  It fails, however, to list either in the complaint or the statutory provisions in the section of her complaint that sets forth the defendants' causes of action asserted.   In any event, there are no factual allegations that would serve to support either of these two claims: plaintiff is not a federal employee, a fact essential for a claim under the Whistleblower Protection Act to prosper (see

generally 5 U.S.C. § 2103, defining "employee," as later used in § 2302, to be one who is employed in the federal civil service), nor she has asserted having been deprived of any of the rights protected by the Fourth Amendment.  She may have intended to raise claims under these provisions, yet has not made any factual allegations that would make these plausible.  Accordingly, they must also be dismissed.

Plaintiff's claim under Articles 1802 and 1803 of the Puerto Rico Civil Code are brought simultaneously with a claim under one of Puerto Rico's labor laws, Act 115.  The Supreme Court of Puerto Rico held in Santini Rivera v. Serv. Air., Inc., 137 D.P.R. 1 (P.R. 1994) that to the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he is barred from using that same conduct under Article 1802. An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law invoked. Here, however, the conduct for which redress is sought under Articles 1802 and 1803 is the same covered by Act 115.  Hence, plaintiff's tort claims under Articles 1802 and 1803 must also be dismissed.

When all is said and done, the only surviving claims are those brought under Title VII and Act 115.  Plaintiff avers in support of them that she was retaliated against for serving as a witness in support of a charge of discrimination made by a fellow co-worker.  She further alleges that the adverse retaliatory action taken against her was a transfer and a disfavorable change in her work shifts after the transfer because she engaged in the protected activity described above.  In this regard, the complaint has set forth enough concrete facts to configure these claims.  While defendants have moved for summary judgment on them, we note that plaintiff failed to oppose said motion based on the pending discovery which she insisted was needed to properly counter it.  Given that the pending discovery has turned out to be relevant only for the First Amendment claim which we have dismissed for lack of facial plausibility, and having now determined that none of that discovery was needed to confront

CIVIL 11-1072CCC                    11

defendant's challenge to her Title VII and Act 115 claims, plaintiff is allowed a final term until AUGUST 27, 2012 to file her opposition to the motion for summary judgment on these two remaining claims.

For the reasons stated, defendants' Motion for Summary Judgment (**docket entry 25**) is partially GRANTED and the following claims are ORDERED DISMISSED: the 42 U.S.C. § 1983 claim under the First Amendment, the 42 U.S.C. § 1985 conspiracy claim, the claim under the Whistleblower Protection Act of 1989, the claim under the Fourth Amendment, and the claims under Articles 1802 and 1803 of the Puerto Rico Civil Code. As to the only surviving claims -- those under Title VII and Act 115 -- plaintiff shall file her opposition to defendants' summary judgment motion by AUGUST 27, 2012.

SO ORDERED.

At San Juan, Puerto Rico, on August 9, 2012.


                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge